_____

No. 96-2251
_____

Jodee Lang,                          *
                                     *
     Plaintiff - Appellant,          *    Appeal from the United States
                                     *    District Court for the
     v.                              *    District of Nebraska.
                                     *
Star Herald,                         *
                                     *
     Defendant - Appellee.           *


_____

Submitted:  November 12, 1996

Filed: March 6, 1997
_____

Before FAGG, BEAM, and HANSEN, Circuit Judges.
_____


HANSEN, Circuit Judge.

     Jodee Lang appeals from the district court's[1] grant of summary judgment to the Star Herald in this Title VII case, in which Lang alleges gender discrimination on the basis of her pregnant status.  We affirm.


I.


     Viewed in the light most favorable to Lang, the record reveals the following facts.  Jodee Lang began working as a part-time employee for the Star Herald in April of 1991 and moved to full-time status in November of 1992.  Under the Star Herald's employee benefits policy, which is outlined in an employee handbook, Lang

_____

     The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

accumulated vacation time and sick leave based upon the number of hours she worked.

In early May 1993, Lang informed her supervisor, Scott Walker, that she was pregnant. She continued working during her pregnancy until she took one week of vacation from June 7 through 11. During her vacation, Lang experienced some bleeding associated with her pregnancy and was advised by her physician not to return to work until it stopped.

On Monday, June 14, 1993, Lang left a message for Walker, stating that she would not be in because she had a medical appointment. The next day, Lang phoned Walker and read him a note from her doctor, which recommended rest for two weeks. During this conversation, she asked Walker whether the Star Herald had a short-term disability policy; he replied that he would find out for her. Lang was absent from work the entire week of June 14-18 and was paid with the balance of her accrued sick leave and vacation time.

Walker phoned Lang on June 23 and informed her that her sick leave had expired and she had no remaining paid vacation time. He also reported that the Star Herald did not have a short-term disability policy. Walker said he would have to let her go but agreed not to take any action until after Friday, June 25.

That Friday, Lang told Walker that her doctor had told her not to resume work because she was still incurring pregnancy-related problems. Lang said she would know after her medical appointment on Monday, June 28, when she could return to work. Walker promised not to take any action until after that time.

On June 28, Lang's doctor recommended that she take additional time off from her job and said he could not predict when she could resume work. When Lang informed Walker of the doctor's recommendation, Walker explained the Star Herald's policy for

2

unpaid leaves of absence.  The policy provides that an employee who has exhausted her paid leave time can apply for an unpaid leave of absence, but the Star Herald does not guarantee that it will hold open the employee's position during her absence.  Walker asked Lang to apply for an indefinite leave of absence, but Lang refused to do so because she would not be guaranteed re-employment.  As a result of her refusal, her employment with the Star Herald was terminated.

Lang filed a charge of discrimination with the Equal Employment Opportunity Commission and then timely filed this suit.  The Star Herald filed a motion for summary judgment, which was eventually granted by the district court.  This appeal followed.

II.

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a) (1994).  In 1978, Congress enacted the Pregnancy Discrimination Act (PDA), amending the definitional provision of Title VII to clarify that discrimination "on the basis of pregnancy, childbirth, or related medical conditions" is sex discrimination under Title VII.  Id. § 2000e(k).[2]

---

Congress enacted the PDA to overturn General Elec. Co. v. Gilbert, 429 U.S. 125, 136-38 (1976), which had held that a pregnancy-related exclusion in an employee disability plan did not violate Title VII.  In Gilbert, a majority of the Court relied on equal protection analysis as set out in Geduldig v. Aiello, 417 U.S. 484, 494-97 (1974), to conclude that discrimination on the basis of pregnancy was not sex discrimination.  By enacting the PDA, Congress not only overturned the holding of Gilbert, but also refuted the Court's reasoning in that case.  Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 678 (1983).  As a result of the PDA, the Title VII terms "because of sex" or "on the basis of sex" include discrimination on the basis of pregnancy, childbirth, or related medical conditions.  42 U.S.C. § 2000e(k).

3

Lang claims that the Star Herald illegally discriminated against her on the basis of her pregnancy by denying her an indefinite leave of absence with a guarantee that she could return to her position. Lang appeals the district court's grant of the Star Herald's motion for summary judgment, arguing that her Title VII claim should survive under the theories of disparate treatment and disparate impact.

"We review the district court's grant of summary judgment de novo, applying the same standard as the district court did and examining the record in the light most favorable to the nonmoving party." Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996). Summary judgment is appropriate when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

We begin with Lang's disparate treatment claim. She does not offer any direct evidence of discriminatory intent to support her claim, so we analyze the facts under the familiar burden-shifting framework set out by the McDonnell Douglas line of cases. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-08 (1993); United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-15 (1983); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, Lang must first have evidence that will establish a prima facie case, namely, (1) that she belonged to a protected class, (2) that she was qualified to receive the benefit of an indefinite unpaid leave of absence with a guarantee of returning to her former position, (3) that she was denied the benefit, (4) and that the same benefit was available to others with similar qualifications. See Adams v. Nolan, 962 F.2d 791, 794 (8th Cir. 1992). If she successfully establishes a prima facie case, the burden of production shifts to the Star Herald to

4

offer a nondiscriminatory reason for its action. Stevens v. St. Louis Univ. Medical Ctr., 97 F.3d 268, 270-71 (8th Cir. 1996). Once the Star Herald advances a nondiscriminatory reason, Lang must show, in this summary judgment proceeding, that she has sufficient admissible evidence from which a rational factfinder could find that the Star Herald's proffered nondiscriminatory reason was either untrue or not the real reason, and that intentional discrimination was the real reason. Hicks, 509 U.S. at 515; Ryther v. KARE 11, No. 97-3622, slip op. at 8-9 n.5 (8th Cir. Mar. 6, 1997) (en banc); see also Ryther, slip op. at 35 n.13 (Part I.A. of concurring and dissenting opinion, in which eight active judges joined).

Lang argues, based on an instruction in the Eighth Circuit Model Civil Jury Instructions and on St. Mary's Honor Center v. Hicks, that she does not need to show that she was treated differently than similarly situated employees. She contends that she need only show that her pregnancy-related situation was a motivating factor in her discharge. Lang's position is premised upon a fundamental misunderstanding of the law when a claim of sexual discrimination is addressed in the summary judgment setting.

Title VII requires employers to treat employees who are members of protected classes the same as other similarly situated employees, but it does not create substantive rights to preferential treatment. 42 U.S.C. § 2000e-2(j) (1994). Thus, as the prima facie elements enumerated above demonstrate, Lang must have evidence that she was treated differently than similarly situated employees. In fact, the PDA specifically states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k) (1994) (emphasis added). See also Carney v. Martin Luther Home, Inc., 824

5

F.2d 643, 646 (8th Cir. 1987) ("Congress sought to limit the burden on employers by making clear that the amendment was intended only to prevent the <u>exclusion</u> of pregnancy coverage, not to require that employers who had no disability or medical benefits at all provide them to pregnant women."). As the Seventh Circuit candidly stated, "The [PDA] does not require that employers make accommodations for their pregnant workers; `employers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees.'" Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996) (quoting Troupe v. May Dep't Stores Co., 20 F.3d 734, 738 (7th Cir. 1994)). The plaintiff's burden of establishing a prima facie case serves, in part, to assure that the plaintiff has some competent proof that she was treated differently than similarly situated employees.

Eighth Circuit Model Civil Jury Instruction § 5.91, on which Lang relies, is fully consistent with the requirement that Lang initially establish her prima facie case. True, as Lang points out, the instruction does not explain the McDonnell Douglas framework, including the prima facie elements. See Manual of the Model Civil Jury Instructions for the District Courts of the Eighth Circuit § 5.91 (1995). Reference to this complex analysis is not necessary, however, or even recommended. Grebin v. Sioux Falls Indep. Sch. Dist. No. 49-5, 779 F.2d 18, 20 (8th Cir. 1985); see also Ryther, slip op. at 36 (seven active judges of the en banc court joining Part IIA of Judge Loken's separate opinion, which said district courts are not "constrained to instruct how discrimination can be proved" and which rejected Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1105 (8th Cir. 1996), which had stated that "the district courts in this circuit are constrained to instruct juries on the elements of the prima facie case."). The burden-shifting analysis is simply a procedural framework that progressively focuses the inquiry on the question of whether a material issue of discrimination in fact exists. See Hicks, 509 U.S. at 506-10. Model instruction § 5.91 properly focuses on the single ultimate factual issue for the jury -- whether the plaintiff

is a victim of intentional discrimination -- and does not conflict with the requirement that Lang must initially establish a prima facie case to avoid summary judgment or judgment as a matter of law when the case is tried.

Lang's reliance on Hicks is likewise misplaced. In Hicks, the Supreme Court explained the requirement that a plaintiff must ultimately prove that the defendant's proffered reason for its action is merely a "pretext for discrimination." Hicks, 509 U.S. at 508-11. The entire discussion in Hicks operates on the understanding that the plaintiff had already established a prima facie case; indeed, if a plaintiff fails in this endeavor, the plaintiff will be directed out at the close of the plaintiff's evidence. Id. at 506; Burdine, 450 U.S. at 252-53. Under clearly settled law, Lang has the initial burden of establishing her prima facie case in order to raise the rebuttable presumption of sex discrimination. Id.

Alternatively, Lang contends she has actually produced evidence establishing her prima facie case. The district court held that Lang failed to do so, because she submitted no evidence that the Star Herald denied her a benefit that she was qualified to receive and that other, nonpregnant employees did receive. We agree. The Star Herald's employee handbook indicates that the policy for leaves of absences was essentially the same for pregnant and nonpregnant employees, and that no one was qualified to receive the benefit Lang sought, viz., an indefinite unpaid leave of absence with a guarantee of a job when the employee wanted to return to work.

Lang argues that the policy was in fact discriminatory. She first points to a nonpregnant coworker, Peggy Carbojol, who allegedly was given indefinite time off for personal reasons. The benefit Carbojol received was quite different, however, from the one Lang sought. Carbojol's absence, which amounted to only one

7

day, was covered by her accrued paid leave time.  The evidence of Carbojol's leave does not show that Carbojol or any employee was granted unpaid leave time with a guarantee of re-employment as Lang sought, nor does it establish that Lang was qualified to receive that benefit.

Lang also makes a comparison to another nonpregnant coemployee, Teresa Martinez, who was granted a variance from the leave policy. According to Lang's brief (p. 10), Martinez asked for and received three to four days off without pay at the commencement of her employment period. The benefit Martinez received differs significantly from the one Lang sought in that Martinez's period of unpaid leave was definite in duration -- four days at the most.  Like the Carbojol evidence, this evidence of Martinez's leave does not advance Lang's case.

Because Lang has produced no evidence to show that the Star Herald's indefinite-leave-of-absence policy was different for her than it was for nonpregnant employees, we conclude that Lang failed to establish a prima facie case.  Lang has not submitted evidence showing that she is qualified to receive an unpaid indefinite leave of absence with a guarantee of returning to her position or that the Star Herald has ever granted such a benefit to other employees.

Lang maintains that the fact that she asked for indefinite leave is unimportant, because coworkers could have covered for her.  The relevant question, however, is whether the Star Herald treated Lang differently than nonpregnant employees on an indefinite leave of absence, not whether the Star Herald could have made more concessions for Lang.  We emphasize again that Title VII does not create rights to preferential treatment.  42 U.S.C. § 2000e-2(j) (1994).

Finally, Lang contends that she actually had five remaining unpaid vacation days to use at the time she was discharged.  She

8

points to a policy provision in the employee handbook, which states: "All employees eligible for vacation who have not earned two weeks of vacation during the year may take unpaid time off in addition to their paid vacation time off up to a total of two weeks off during the year." (J.A. at 72.) Lang contends that because she had only accumulated 40 hours (5 days) of vacation time at the time she was terminated (June), she could have taken 5 unpaid days under this provision.

We agree with the district court that this provision applies only to newly hired employees who have not yet worked for the Star Herald for one year. At the time Lang was discharged, she had worked for the Star Herald for more than two years. The provision is therefore inapplicable here.

We do not address Lang's arguments that the Star Herald's proffered reason for its employment decision was pretext for discrimination, because her failure to establish her prima facie case means that the burden of production of the employer's allegedly nondiscriminatory reason never arises.

Lang also argues her case under the theory of disparate impact. The district court dismissed Lang's disparate impact claim because she had not specifically alleged in her pleadings that the Star Herald's unpaid leave policy has a disproportionate impact on pregnant women. Because Lang's disparate impact claim fails as a matter of law, we decline to address the pleading issue. To establish a prima facie case of disparate impact, Lang must show that the Star Herald's facially neutral policy is in fact unjustifiably more harsh on pregnant women than on other people. Krauel v. Iowa Methodist Medical Ctr., 95 F.3d 674, 681 (8th Cir. 1996). To prove this, Lang "must offer `statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion' of benefits because the beneficiaries would be women." Id. (quoting Watson v. Fort Worth Bank & Trust,

487 U.S. 977, 994 (1988)).  Lang has provided no statistical support for her claim, and in fact concedes in her brief that "there is no evidence of statistical imbalance with this small [of] an employer."  (Appellant's Br. at 26-27.)  As a result, there is no evidence in this record of a disproportionately adverse impact on pregnant women, and we affirm the district court's judgment because Lang cannot establish a prima facie case of disparate impact.

### III.

For the above reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

10