# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1037

_____

| | | |
|---|---|---|
| Nicole Bergstrom-Ek, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Best Oil Co., d/b/a/ The Little Stores, | * | |
| and Lola Aune, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 10, 1998
Filed: August 11, 1998

_____

Before LOKEN and HEANEY, Circuit Judges, and JONES[1], District Judge.

_____

JONES, District Judge.

Nicole Bergstrom-Ek appeals from a final judgment entered in the District Court for the District of Minnesota granting Best Oil, Co. d/b/a The Little Stores ("Little Stores") summary judgment on several state law claims and judgment as a matter of law on Ek's claims of sex discrimination based on pregnancy and reprisal. We affirm

---

[1]The Honorable John B. Jones, United States District Judge, United States District Court for the District of South Dakota, sitting by designation.

the District Court's ruling on the summary judgment motion, but reverse the grant of judgment as a matter of law and remand for further proceedings.

## I.  BACKGROUND

Ek brought this action for sex discrimination based on pregnancy under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) and the Minnesota Human Rights Act, Minn. Stat. §§ 363.01-363.15 ("MHRA"), and reprisal under the MHRA. Prior to trial, the District Court granted Little Stores' and Aune's motion for summary judgment on several of Ek's state law claims.  On the first day of trial, prior to jury selection, the District Court reconsidered its ruling on the summary judgment motion and granted summary judgment in favor of Little Stores and Aune on the remaining negligence claims.  As a result of this ruling Aune was dismissed as a party defendant. At the close of Ek's case during the jury trial, the District Court granted judgment as a matter of law to Little Stores on Ek's sex discrimination and reprisal claims.

Resolving all factual conflicts in favor of Ek and giving her the benefit of all reasonable inferences, the record reveals the following facts.  See Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 689 (8th Cir. 1997) (discussing the applicable standard to review a grant of judgment as a matter of law).  Ek began her employment with Little Stores at the West End Little Store ("West End") in Duluth, Minnesota in October 1993 as a sales clerk, earning minimum wages.  Ek was 19 years old.  Throughout Ek's employment at West End, Lola Aune was the manager.  In early January 1995, Ek was selected to be promoted to assistant manager and began training for the paperwork duties she would have as an assistant manager.  Aune told Ek that Ek would have a good chance of becoming the manager of West End because at some time Aune would probably move to a new store on Central Avenue.  On January 12, 1995 Ek received an excellent review for her job performance and was given a $.30 per

hour raise, which became effective January 29, 1995. Ek learned she was pregnant a few days after she received this review. Ek told Aune she was pregnant one or two days after she learned of her pregnancy.

Ek had an excellent working relationship with Aune until she told Aune about her pregnancy in mid-January 1995. They socialized outside of the workplace on at least four occasions between October 1993 and January 1995. However, their relationship changed after Ek informed Aune of her pregnancy. During their first conversation about the pregnancy, Aune told Ek to get an abortion. Aune said Ek was "stupid," that the father would never "stick around" and that Ek would end up on welfare. Aune offered to take Ek to the Twin Cities to get an abortion and also offered to pay for an abortion. Ek refused to have an abortion. Lynette Lone, a sales clerk at West End, witnessed the negative change in Aune's behavior toward Ek after Aune learned of Ek's pregnancy. Lone heard Aune tell Ek to get an abortion on more than six different occasions. Aune did not deny that she discussed the issue of abortion with Ek. Aune testified that rather than telling Ek to get an abortion, she told Ek if *she* were in Ek's situation she might have an abortion

On one occasion Aune called Ek's home and talked to Ek for a long period of time trying to persuade her to get an abortion. During this phone conversation, Aune again offered to pay for an abortion and provide transportation to the Twin Cities. Ek again told Aune that she would not have an abortion. Once Ek refused to have an abortion, Aune said she would push Ek down a flight of stairs to cause a miscarriage, that Ek would have no way to pay for a baby, and that insurance would not cover the cost of delivering the baby because Ek was pregnant before she was promoted. On another occasion, Aune invited her cousin to come into West End and tell Ek how much it costs for the birth of a baby. In February 1995 Aune and another Little Stores manager told Ek she would not be able to move up in the company because she could not take care of a child and manage a career. Ek wanted to be happy about being pregnant, but Aune made her feel completely miserable.

In January 1995, Aune, Ek and Curt Solomon (Aune's supervisor) met to discuss Ek's promotion to assistant manager. During this conversation Aune told Solomon that Ek was pregnant and that Aune told her to get an abortion. Solomon inquired whether Ek wanted to have an abortion. Ek told him "no." Aune was not disciplined for discussing Ek's pregnancy on work premises or for suggesting that Ek have an abortion.

Although lifting heavy items, such as pop crates, was part of Ek's regular job duties, Aune made Ek lift such items more often than she was required to do before she became pregnant. Ek did not have a doctor's order restricting her activities, but Ek believed lifting such heavy items would harm her pregnancy. On one occasion Ek brought in a doctor's order requesting that Ek not work that evening. When Aune received the order she said if Ek's pregnancy was going to cause any restrictions on her work, Aune would reevaluate Ek's position.

On March 10, 1995, Ek ended her employment at West End. Aune was not present in the store that day. Denise Bond, Aune's aunt, was working at the store on March 10, 1995. Bond was an assistant manager with whom Ek did not have a good working relationship. Bond ordered Ek (who was an assistant manager in training) to stock the pop cooler. Following a discussion between Ek and Bond regarding Bond's order, Ek called Aune to settle the dispute. Ek was upset at the manner in which Bond ordered her to stock the pop cooler and also told Aune she was concerned that carrying the heavy pop crates would harm her pregnancy. Aune told Ek she would be okay because she was not that far along in her pregnancy and told her to just put up with Bond and go stock the cooler. Aune refused to allow Ek to speak with Curt Solomon who was in the same store where Aune was working that day. Ek ended her employment at West End immediately after the conversation with Aune.

Ek left a message for Chris McKinney, a part-owner of Little Stores, to call her on the day she quit. A few days later, when Chris McKinney called her back, Ek

informed him of the reasons she quit at West End including her concerns about her pregnancy and the way Aune had been treating her. Thereafter Ek spoke with Mike McKinney, another part-owner of Little Stores, who informed Ek that two other Little Stores had openings for assistant managers and that Ek could choose between them. Ek chose the Spirit Valley Little Store ("Spirit Valley"), which was only four blocks from Ek's home. When Ek arrived at Spirit Valley to begin her employment, she was informed that she was only scheduled for 20 hours per week. At West End, Ek had been working 40 to 45 hours per week. The company policy required assistant managers to work at least 35 hours per week, and guaranteed such hours to assistant managers. Ek performed sales clerks' duties at Spirit Valley, rather than the additional duties of an assistant manager. When Ek asked the manager of Spirit Valley about the reduction in Ek's hours, he responded that they were overstaffed and Ek was led to believe it would continue like that. The manager did not say how long the reduction in hours would last, and Ek did not further pursue the issue. Ek did not call Mike McKinney regarding the reduction in hours. Ek saw one schedule and worked two shifts prior to quitting at Spirit Valley. Prior to Ek quitting at West End, Aune explained to Ek the way the Little Stores got rid of undesirable employees, whom they did not have sufficient grounds to terminate, was to reduce their hours. Ek provided one specific example of when Aune utilized this method. Aune reduced the hours for a female employee with several medical problems, whom Aune did not have sufficient grounds to terminate, even to the point of not scheduling her for any hours for a one-week period.

Prior to Ek's employment at West End, two other young female sales clerks had experiences with Aune similar to that described by Ek. We note that conflicting testimony was presented regarding these two individuals, but we will resolve all factual conflicts in favor of Ek. See Manning, 127 F.3d at 689. Carol Ranua was a sales clerk at West End from August 1991 to June 1992. Ranua was terminated two or three days after informing Aune she was pregnant. Aune asked Ranua whether she was sure she should have a baby. Aune required Ranua to lift heavy items and was hostile to her

-5-

after learning of Ranua's pregnancy. On one occasion, Solomon (Aune's supervisor) and Aune mocked Ranua for refusing to carry a heavy box of canned goods up a ladder, despite knowing Ranua was pregnant. Ranua had been written up on approximately four different occasions prior to being fired, which Little Stores asserts was the reason for her termination. Ranua informed Mike McKinney of her belief that she thought Aune fired her because of her pregnancy. Following an investigation, Mike McKinney concluded sufficient grounds existed for Ranua's termination. Aune was not subjected to any type of disciplinary action in relation to Ranua's termination.

Jennifer Carr/Norman worked at West End from September 1991 to January 1992. After Carr told Aune she was pregnant, Aune was hostile to Carr, called Carr names such as "bitch" and "whore," and made Carr lift heavy items and shovel snow more often than she made Carr do prior to learning Carr was pregnant. Aune approached the father of Carr's baby while he was a customer at West End and told him he was "stupid," he was messing up Carr's and his lives and asked him whether he had heard about condoms. After Carr quit, she talked to Mike McKinney but could not remember whether she told him why she thought Aune was treating her badly. Carr wrote a lengthy letter to Mike McKinney explaining Aune's actions, but did not explicitly state she thought Aune was treating her badly because of her pregnancy. Mike McKinney warned Aune not to repeat the rude comments she made to Carr's boyfriend and not to discuss the pregnancy on work premises. Mike McKinney offered to transfer Carr to the Spirit Mountain Little Store. Carr worked at Spirit Mountain for one day and quit because her hours were cut and no one would talk to her or tell her what to do.

As noted above, the District Court granted summary judgment to Little Stores on Ek's state-law claims. At the close of Ek's case during the jury trial, the District Court granted Little Stores' motion for judgment as a matter of law on Ek's claims for sex discrimination based on pregnancy under Title VII and the MHRA, and reprisal discrimination under the MHRA. Regarding the sex discrimination claim, the District

Court found that no reasonable juror could conclude Ek was constructively discharged because Ek did not give Little Stores a reasonable opportunity to resolve the problem. Regarding the reprisal claim, the District Court found Ek failed to present sufficient evidence to show Little Stores engaged in retaliatory conduct.

## II. DECISION

### A.    Judgment As A Matter of Law

We review de novo the district court's grant of judgment as a matter of law, applying the same standard used by the district court.  Manning, 127 F.3d at 689. "'Judgment as a matter of law is appropriate only where the nonmoving party has presented insufficient evidence to support a jury verdict in his or her favor, and this is judged by viewing the evidence in the light most favorable to the nonmoving party and giving him or her the benefit of all reasonable inferences from the evidence, but without assessing credibility.'"  Harvey v. Wal-Mart Stores, Inc., 33 F.3d 969, 970 (8th Cir. 1996) (quoting, Abbott v. City of Crocker, 30 F.3d 994, 997 (8th Cir. 1994)).

### 1.    Sex Discrimination Under Title VII and the MHRA

Title VII of the Civil Rights Act of 1964 and the MHRA declare it unlawful for an employer to discharge "or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...."  42 U.S.C. § 2000e-2(a)(1); see also, Minn. Stat. § 363.03, subd. 1(2) and (5).  As amended by the Pregnancy Discrimination Act, sex discrimination under Title VII includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).  The MHRA likewise prohibits discrimination against "women affected by pregnancy, childbirth, or disabilities related to pregnancy or childbirth ...."  Minn. Stat. § 363.03, subd. 1(5).

-7-

Although Ek focuses the argument in her briefs on quid pro quo sexual harassment and hostile work environment sexual harassment, the District Court did not evaluate her claims under these two theories. The District Court stated in its written opinion regarding Little Stores' and Aune's summary judgment motion that the parties agreed the McDonnell Douglas[2] burden-shifting test should be applied to Ek's claims. (Joint App. at 54). The District Court further stated it was "unclear as to the particular discrimination theory under which Ek is proceeding, but believes that she has alleged a disparate treatment theory based upon constructive discharge ...." (Joint App. at 55). Moreover, Ek agreed at the time of argument on Little Stores' motion for judgment as a matter of law that the McDonnell Douglas analysis was the proper measure of evaluating Ek's claims. Trial Transcript, p.387-412.

We agree with the District Court that Ek's claims are properly evaluated under a disparate treatment theory. See Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 574 (8th Cir. 1997) (finding the plaintiff's claims were best suited to analysis under a disparate treatment theory of constructive discharge because she claimed that due to her pregnancies her employer "subjected her to criticism, discipline, and general harassment in the workplace to the extent that the job-induced stress became too much for her to endure"). Ek is similarly claiming that, due to her pregnancy, Aune subjected her to criticism and general harassment in the workplace to the point that Ek was forced to quit. The Supreme Court of Minnesota adopted the McDonnell Douglas analysis for disparate treatment claims brought under the MHRA. Sigurdson v. Isanti County, 386 N.W.2d 715, 719-20 (Minn. 1986). Therefore, we will simultaneously discuss Ek's sex discrimination claims under Title VII and the MHRA.

To prevail on a sex discrimination claim under a disparate treatment theory, Ek must present proof of discriminatory intent. Marzec v. Marsh, 990 F.2d 393, 395 (8th Cir. 1993) (citations omitted). Ek relied upon circumstantial evidence to prove

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

discriminatory intent and, therefore, we analyze the facts in this case under the burden-shifting test set forth in the McDonnell Douglas line of cases. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-08 (1993); Aikens, 460 U.S. at 713-15; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); McDonnell Douglas, 411 U.S. at 802. Ek is required to establish a prima facie case by presenting evidence which demonstrates: "(1) she was a member of a protected group; (2) she was qualified for her position; and (3) she was discharged under circumstances giving rise to an inference of discrimination." Hanenburg, 118 F.3d at 574, citing, Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996). If Ek is successful in establishing a prima facie case, the burden of production shifts to Little Stores to offer a nondiscriminatory reason for its action. Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir.) cert. denied, ___ U.S. ___, 118 S.Ct. 114 (1997), citing, Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270-71 (8th Cir. 1996). If Little Stores offers a nondiscriminatory reason, the burden shifts to Ek to show that she has sufficient admissible evidence from which a rational factfinder could find that Little Stores' proffered reason was false or not the real reason for its action, and that intentional discrimination was the real reason. Id.

It is clear Ek has established the first two elements of her prima facie case. Ek was a member of the protected class of pregnant women and Little Stores does not dispute that Ek was qualified for her position. Regarding the third element, because Little Stores did not actually terminate her, Ek is required to offer evidence sufficient to demonstrate she was constructively discharged. See Hanenburg, 118 F.3d at 574.

"An employee is constructively discharged 'when an employer deliberately renders the employee's working conditions intolerable and thus forces her to quit her job.'" West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995) (quoting, Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir. 1994)); see Bersie v. Zycad Corp., 399 N.W.2d 141, 146 (Minn.App. 1987) (stating that "'[a] constructive discharge occurs when an employee resigns in order to escape intolerable working

conditions caused by illegal discrimination'") (quoting, Continental Can Co., Inc. v. State, 297 N.W.2d 241, 251 (Minn. 1980)). The employer must have acted with the intention of forcing the employee to quit. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981). "Constructive discharge plaintiffs ... satisfy Bunny Bread's intent requirement by showing their resignation was a reasonably foreseeable consequence of their employers' discriminatory actions." Hukkanen v. International Union, 3 F.3d 281, 285 (8th Cir. 1993). An objective standard is employed to determine whether an employee was constructively discharged. "'An employee may not be unreasonably sensitive to her working environment. A constructive discharge arises only when a reasonable person would find her working conditions intolerable.'" West, 54 F.3d at 497 (quoting, Bunny Bread, 646 F.2d at 1256). If an employee quits without giving her employer a reasonable chance to work out the problem, the employee is not constructively discharged. West, 54 F.3d at 498.

For purposes of the motion for judgment as a matter of law, the District Court assumed a reasonable person would find Ek's working conditions intolerable. Given the standard for evaluating a motion for judgment as a matter of law, we conclude Ek has presented sufficient evidence to support a jury verdict in her favor on this element of constructive discharge. Aune constantly tried to convince Ek to have an abortion, even after Ek told Aune she would not have an abortion. Some of these statements, and other statements regarding Ek's pregnancy, were made in front of Ek's co-employees and customers at West End. Aune required Ek to lift heavy items more often than before Aune learned of Ek's pregnancy. Aune's behavior toward Ek changed from friendly and courteous to mean and hostile.

Regarding the issue of intent, Ek presented evidence that in the absence of justifiable cause to fire an employee Little Stores' method of getting an undesirable employee to quit was to reduce such employee's hours. Moreover, despite Mike McKinney's knowledge of other young pregnant females who complained of Aune's discriminatory conduct, no disciplinary action was taken against Aune, except the

-10-

verbal warning in connection with Carr not to discuss employees' pregnancies on work premises. Based upon this evidence, a reasonable jury could conclude it was reasonably foreseeable to Little Stores that other pregnant employees would quit because of Aune's discriminatory conduct.

The District Court ruled Ek was not constructively discharged based on its finding that Little Stores was not given a reasonable opportunity to work out the problem. When Ek left her shift at West End before it was over on March 10, 1995, she immediately called the owners of Little Stores to inform them of Aune's discriminatory conduct. A few days later Mike McKinney offered Ek a position as an assistant manager at two different stores. Ek accepted this offer and chose Spirit Valley. However, upon Ek's arrival at Spirit Valley she was only scheduled for 20 hours per week and assigned the duties of a sales clerk. Although Ek did not again call Mike McKinney, she attempted to resolve the issue of the reduction in her hours with the manager of Spirit Valley. The manager informed Ek that Spirit Valley was overstaffed and Ek understood the reduction in hours would continue. Ek worked two shifts at Spirit Valley and quit. Although Little Stores makes the general assertion that Ek's hours would have increased, there is no evidence in the record to support that assertion. After being harassed by Aune for nearly two months, being told she could transfer to another store with an opening for an assistant manager and then learning Spirit Valley was overstaffed, Ek decided to quit. At the time she made this decision, Ek possessed knowledge of Little Stores' method of getting an undesirable employee to quit. Based upon the evidence presented at trial, we conclude Ek presented sufficient evidence for a reasonable jury to conclude she gave Little Stores a reasonable opportunity to work out the problem.

Having found that Ek presented sufficient evidence to support a jury verdict in her favor on the issue of constructive discharge, we conclude Ek established a prima facie case of sex discrimination based upon pregnancy. Therefore, we conclude the District Court erred in granting Little Stores' motion for judgment as a matter of law

at the close of Ek's case on Ek's Title VII and MHRA claims of sexual discrimination based upon her pregnancy.  We reverse and remand for a new trial on these claims.[3]

## 2.    Reprisal Claim Under MHRA

The MHRA makes it unlawful for employers to "intentionally engage in any reprisal against any person because that person ... opposed a practice forbidden [by the MHRA] or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Chapter."  Minn. Stat. § 363.03, subd. 7(1).  A reprisal is defined under the MHRA as including "any form of intimidation, retaliation or harassment" including assignment to a "lesser position in terms of wages, hours, job classification, job security, or other employment status."  Minn. Stat. § 363.03, subd. 7(2).  The three-part analysis set forth in McDonnell Douglas is applicable to a claim of reprisal under the MHRA.  Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983).  In order to establish a prima facie case of reprisal discrimination, Ek must demonstrate: (1) that she engaged in statutorily protected conduct; (2) there was an adverse employment action by Little Stores; and (3) a causal connection existed between her conduct and the adverse employment action.  Id. at 444.

Ek engaged in statutorily protected conduct by complaining about Aune's discriminatory conduct to Little Stores' owners.  In connection with the second element, Ek presented evidence that following her transfer to Spirit Valley her hours

---

[3]We note our recommendation that when faced with a motion for judgment as a matter of law, the trial court should usually allow the case to go to the jury and review the ruling, if necessary, upon a properly filed motion after the jury returns a verdict.  Harvey v. Wal-Mart Stores, Inc., 33 F.3d 969, 970 (8th Cir. 1994), citing, Dace v. ACF Indus., Inc., 722 F.2d 374, 379 n.9 (8th Cir. 1983).  This procedure eliminates the need for a new trial in the event this Court decides on appeal that judgment was not properly granted in favor of the moving party.  Id.

were cut by more than fifty percent and she was not assigned to perform the duties of an assistant manager. Ek presented evidence that upon speaking with the manager of Spirit Valley she was led to believe the reduction in hours would continue because of overstaffing at that store. There was no evidence presented at trial to contradict Ek's understanding that the reduction in her hours would continue. Although the second element is not as clearly established as the first element, we conclude Ek demonstrated an adverse employment action by Little Stores in terms of reduced hours (resulting in reduced wages) and reduced job responsibilities.

Ek must also establish a causal connection between her complaint to Little Stores' owners regarding Aune's discriminatory conduct and the adverse employment action. Although Ek does not present any direct evidence of a causal connection, this element "may be demonstrated indirectly by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time." Hubbard, 330 N.W.2d at 444-45. It is clear that Little Stores had actual knowledge of Ek's protected activity and that the reduction in Ek's hours followed closely in time. Ek was transferred to Spirit Valley within a few days of leaving West End. Ek's hours were immediately reduced to twenty hours and she was not assigned the duties of an assistant manager at Spirit Valley. In addition, evidence was presented that Little Stores' method of getting an undesirable employee to quit was to reduce such employee's hours. We conclude Ek has demonstrated a causal connection sufficient to establish her prima facie case of reprisal discrimination.

We conclude that Ek has established a prima facie case of reprisal pursuant to the test set forth in McDonnell Douglas. We, therefore, reverse the District Court's grant of judgment as a matter of law to Little Stores on Ek's reprisal claim, and remand for further proceedings consistent with this opinion.

**B.     Summary Judgment**

We review de novo the district court's grant of summary judgment. Davis v. Fulton County, 90 F.3d 1346, 1350 (8th Cir. 1996) (citation omitted). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We must view the evidence in the light most favorable to the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial." Davis, 90 F.3d at 1350, citing, Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

The District Court granted Little Stores' motion for summary judgment on Ek's claims of intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, negligent retention, violation of the Minnesota Whistleblower's Statute, Minn. Stat. § 181.932, and aiding and abetting reprisal against Aune under the MHRA. On the first day of trial, prior to jury selection, the District Court reconsidered its ruling on Little Stores' motion for summary judgment and granted summary judgment in favor of Aune and Little Stores on Ek's claims of negligence, negligent supervision, and negligent investigation. We have carefully considered all arguments regarding these state law claims and have reviewed the entire record in relation thereto. We find that there is no genuine issue of material fact and that summary judgment was properly entered in favor of Little Stores and Aune on these state law claims.

-14-

## III. CONCLUSION

For the reasons stated herein, we find that the District Court erred in granting Little Stores' motion for judgment as a matter of law at the close of plaintiff's case. We reverse and remand the case for proceedings consistent with this opinion on Ek's claims of sex discrimination based on pregnancy under Title VII and the MHRA and reprisal under the MHRA.   We affirm the District Court's decision in all other respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-