Tanya SCHEIDECKER, Plaintiff,

v.

ARVIG ENTERPRISES, INC., Royale Comtronics, Inc., Royale Comtronics Sales & Service, Inc., and Nancy Ettish, Defendants.

Susan Von Ruden, Plaintiff,

v.

Arvig Enterprises, Inc., East Otter Tail Telephone Company, Nancy Ettish, and Catherine Ekern, Defendants.

Nos. Civ. 99–1259 ADM/RLE, Civ. 99–1260 ADM/RLE.

United States District Court, D. Minnesota.

Nov. 9, 2000.

Stephen W. Cooper, Stacey R. Everson, The Cooper Law Firm, Minneapolis, Minnesota, for plaintiffs.

Mary E. Stumo, Angela M. Crandall, Ann M. Kraemer, Faegre & Benson, Minneapolis, Minnesota, for defendants.

## MEMORANDUM OPINION AND ORDER

MONTGOMERY, District Judge.

### I. INTRODUCTION

Because these two companion cases involve many of the same facts and legal analysis, the Court will discuss both cases in this combined Memorandum Opinion and Order.

On September 26, 2000, the undersigned United States District Judge heard Defendants' Motion for Summary Judgment [Doc. No. 51] in the Von Ruden case. Defendants seek summary judgment on all of Von Ruden's remaining claims:[1] (1) discriminatory disparate treatment based on her gender and pregnancy in violation of Title VII; (2) discriminatory disparate treatment based on her gender and pregnancy in violation of the Minnesota Human Rights Act ("MHRA"); (3) discriminatory disparate impact based on her gender and pregnancy; (4) violation of the Family and Medical Leave Act ("FMLA"); (5) a disability discrimination claim; and (6) a harassment claim. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

On October 18, 2000, the undersigned United States District Judge heard Defendants' Motion for Summary Judgment [Doc. No. 84] in the Scheidecker case. Defendants seek summary judgment on all of Scheidecker's remaining claims:[2] (1) discriminatory disparate treatment based on her gender and pregnancy in violation of Title VII; (2) discriminatory disparate treatment based on her gender and pregnancy in violation of the Minnesota Human Rights Act ("MHRA"); (3) discriminatory disparate impact based on her gender and pregnancy; and (4) violation of the Family and Medical Leave Act ("FMLA") and the Minnesota Parenting Leave Act ("MPLA"). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

### II. BACKGROUND

This is a tale of two corporations and four pregnant employees. Arvig Enterprises, Inc. ("Arvig Enterprises") is a company that operates a telecommunications business engaged in telephone, cable television, and Internet service, as well as the sale, installation, and maintenance of telecommunications equipment. Allen Arvig is the president and CEO of Arvig Enterprises. *See* Arvig Dep., at 20. Don Swenson ("Swenson") is the director of operations. *See* Swenson Dep., at 14. Nancy Ettish ("Ettish") is the director of administrative services, which conducts human resources functions. *See* Ettish Dep., at 40, 61. Catherine Ekern ("Ekern") is the director of marketing. *See* Ekern Dep., at 37.

Royale Comtronics Sales & Services, Inc., ("RCSS") is a company that leased premises telephone equipment, provided customer wiring services, and operated retail Radio Shack Stores from 1982 until June 1998. Allen Arvig is also the president and CEO of RCSS. Dave Schornack ("Schornack") is the general manager at

---

1. Plaintiff's Title VII claims and Minnesota Human Rights Act claims against Individual Defendants Ettish and Ekern were dismissed by an Order [Doc. No. 23] dated December 13, 1999. Plaintiff's Minnesota Parenting Leave Act claim against Defendants was dismissed by the same Order, as was Count 3 of Plaintiff's Complaint, which claimed negligent supervision; Count 4 of Plaintiff's Complaint, which claimed intentional infliction of emotional distress; and Count 5 of Plaintiff's Complaint, which claimed negligent infliction of emotional distress.

2. An Order [Doc. No. 27] by Judge Michael J. Davis, dated January 20, 2000, dismissed Plaintiff's claims for negligent and intentional infliction of emotional distress. The Order also dismissed Plaintiff's claims under Title VII and the MPLA against Defendant Ettish and Plaintiff's claims for negligent supervision against all Defendants. A subsequent Order [Doc. No. 29] by Judge Davis, dated February 10, 2000, granted summary judgment on Plaintiff's MHRA claim against Defendant Ettish.

RCSS. *See* Schornack Dep., at 9. Barb Eiter ("Eiter") is a supervisor at RCSS. *See* Schornack Dep., at 33; Scheidecker Dep., at 48. On June 30, 1998, RCSS sold its assets to Arvig Enterprises. *See* Schornack Aff. ¶ 3. At that time, Arvig Enterprises transferred its RCSS assets into Royale Comtronics, Inc., ("Royale Comtronics") a newly-formed subsidiary of Arvig Enterprises. *See* Vyskocil Dep., at 22–23, 53, 56–58; Arvig Dep., at 37–39.

Plaintiff Susan Von Ruden ("Von Ruden") was an employee with Arvig Enterprises from 1987 until July 6, 1998. *See* Von Ruden Dep., at 129–31. Until 1993, Von Ruden worked as a customer service representative. *See id.* From 1993 until the time she was dismissed, Von Ruden worked as a marketing and public relations assistant. *See id.*, at 138; Swenson Dep., at 57–60. In September 1997, Arvig Enterprises hired Ekern as marketing director. *See* Swenson Dep., at 88. Thereafter, Von Ruden reported to Ekern and assisted with marketing projects. *See* Von Ruden Dep., at 140–42; Ekern Dep., at 103. As director of operations, Swenson supervised Ekern. *See* Ekern Dep., at 88. Von Ruden announced her pregnancy January 2, 1998. *See* Ettish Dep., at 133; Von Ruden Dep., at 237. Swenson had warned Von Ruden that more children may affect her ability to receive promotions. *See* Von Ruden Dep., at 180–83. Ekern told Von Ruden that once a woman has two children, it was her experience that such a woman would not return to work. *See id.*, at 427–28. Meanwhile, Ekern was dissatisfied with Von Ruden's performance, such as her timeliness in completing projects. *See* Ekern Dep., at 93, 103, 117. Von Ruden's failure to alert the media until the day of a grant signing event on June 16, 1998, resulted in Ekern's disappointment that only one reporter attended the event. *See id.*, at 324. Allen Arvig also was dis-

pleased with Von Ruden's handling of the media event. *See* Arvig Dep., at 85. On July 6, 1998, a few days before the birth of her child, Ettish and Ekern met with Von Ruden and informed her that she was being discharged. *See* Von Ruden Dep., at 394–96.

Tonia Evans was a marketing and public relations representative at Arvig Enterprises. *See* Evans Aff. ¶ 1. Evans was a capable employee who received positive performance reviews. *See* Evans Aff. ¶ 4; Swenson Dep., at 262. Evans also was pregnant in July 1998 and Arvig Enterprises management was aware of her pregnancy. *See* Evans Aff. ¶ 6; Ettish Dep., at 95–97. Tonia Evans was terminated on the same day as Von Ruden. *See* Evans Aff. ¶ 3; Ettish Dep., at 235.

Plaintiff Tanya Scheidecker ("Scheidecker") was hired by RCSS as an inventory clerk on May 27, 1997. *See* Scheidecker Dep., at 48. After struggling to meet RCSS's performance expectations in her inventory clerk position, Scheidecker transferred to the receptionist position. *See* Scheidecker Dep., at 48; Eiter Aff. ¶ 8–9. Scheidecker performed well as the receptionist. *See* Schornack Dep., at 56. She received a positive performance review. *See* (Schdkr) Pl.Ex. H. In November or December of 1997, Scheidecker told RCSS that she was pregnant with a due date of May 20, 1998. *See* Scheidecker Dep., at 58, 62–63, 70. On April 14, 1998, Scheidecker gave birth to her baby prematurely and began her maternity leave. *See id.*, at 70. On April 28, 1998, RCSS placed a service order for the installation of a Centrex answering system.[3] *See* Ettish Aff., Ex. C. On May 7, 1998, Ettish and Eiter summoned Scheidecker to a public restaurant to notify her that her position at RCSS was terminated because of the installation of the Centrex system on June

---

**3.** Centrex is a telephone system under which calls are answered by a bank of central operators physically located in, and employed by, a separate company. The operators answer the calls with the name of the company being called, which is indicated on their computer screens, and then transfer the calls to the appropriate individuals at the appropriate companies. *See* Arvig Dep., at 132–35.

1, 1998. *See* Scheidecker Dep., at 74–77; Eiter Dep., at 85–86. Schornack has testified that Scheidecker's termination was related to budget issues and an effort to reduce costs and improve efficiency. *See* Schornack Dep., at 65. Due to delays, the installation of the Centrex system was not completed until October 1998. *See* Ettish Dep., at 322–23.

Daisy Johnson was a support staff employee at RCSS, who "did a little bit of everything." Schornack Dep., at 63. Johnson, Scheidecker's co-worker, also was terminated in May 1998. Johnson was told that her position was not necessary due to the installation of Centrex. *See* Johnson Aff. ¶ 6; Ettish Dep., at 257. Daisy Johnson gave birth to her baby on May 28, 1998.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact does not exist "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant has the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant meets its Rule 56(c) burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reason-

ably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When weighing the evidence offered by the parties on a motion for summary judgment, this Court must review the evidence and all inferences drawn from that evidence in the light most favorable to the party opposing the motion. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348.

### B. Single Entity or Joint Employer

Von Ruden and Scheidecker have produced evidence that Arvig Enterprises and RCSS may have constituted a single entity, or operated as joint employers, for Title VII purposes. Title VII is given a liberal construction in order to carry out its purposes. *See Parham v. Southwestern Bell Telephone*, 433 F.2d 421, 425 (8th Cir.1970). Such liberal construction is also given to the definition of "employer" under 42 U.S.C. § 2000e(b). *See Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir.1977). A "single employer" situation exists "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'" *NLRB v. Browning–Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122 (3rd Cir.1982). The single entity analysis is appropriate when "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a 'single enterprise.'" *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960). The single entity analysis consists of four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *See Baker*, 560 F.2d at 392 (citing *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S.

255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965)). These factors must be applied in the determination of "employer" under 42 U.S.C. § 2000e(b). *Id.* However, no single factor is controlling. *Id.*

 In a "joint employer" relationship, by contrast, there is no single integrated enterprise. The joint employer analysis assumes separate legal entities exist, but that they have chosen to handle certain aspects of their employer-employee relationships jointly. *See Browning–Ferris,* 691 F.2d at 1122. A finding of joint employer is proper where one company has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. *See id.* The Eighth Circuit applies the same four factors used in a single entity analysis to a joint employer relationship.[4] *See Pulitzer Publ'g. Co. v. NLRB,* 618 F.2d 1275 (8th Cir.1980); *Miscellaneous Drivers and Helpers Union, Local No. 610 v. NLRB,* 624 F.2d 831 (8th Cir.1980). Thus, the four factors articulated in *Radio Union* must be evaluated to determine whether Arvig Enterprises and RCSS operated as a single entity or joint employer for Title VII purposes.

First, interrelation of operations was present as a result of the close link between the businesses of RCSS and Arvig Enterprises. RCSS provided some services to Arvig Enterprises. *See* Vyskocil Dep., at 10. Additionally, RCSS supplied phone equipment and service to customers who had their dial tone provided by Arvig Enterprises. *See id.,* at 33–34. Arvig Enterprises provided RCSS with a Centrex system, voice mail system, a directory assistance answering service, and alarm monitoring. *Id.,* at 93. On July 1, 1998, Arvig Enterprises completed a purchase of RCSS. *Id.,* at 56–58; Schornack Aff. ¶ 3.

The second factor is common management. The boards of directors of Arvig Enterprises and RCSS were nearly mirror-images of one another. Allen Arvig was the chair of both boards and all of the RCSS directors were Arvig Enterprise directors. The RCSS[5] board of directors consisted of Allen Arvig, Carmen Arvig, Don Swenson, and Rick Vyskocil. *See* Vyskocil Dep., at 98–99. Directors sitting on the Arvig Enterprises board included Allen Arvig, Carmen Arvig, Don Swenson, Rick Vyskocil, David Arvig, Eleanor Arvig, David Pratt, Donna Ward, and Marvin Ward. *See* (Schdkr) Pl.Ex. Y. Moreover, the channels of management authority at both Arvig Enterprises and RCSS led to the same person: Allen Arvig, president and CEO. Ekern, who was responsible for terminating Von Ruden, reported to her supervisor, Swenson. *See* Ekern Dep., at 88. Swenson also was the immediate supervisor of Schornack, the general manager who terminated Scheidecker. *See* Schornack Dep., at 92–93. Swenson reported to Allen Arvig. *See* Swenson Dep., at 13–14; Arvig Dep., at 71. Arvig Enterprises and RCSS had common management.

For the third factor, Arvig Enterprises and RCSS have demonstrated centralized control of labor relations. Some courts consider this factor to be the most significant in the inquiry. *See Trevino v. Celanese Corp.,* 701 F.2d 397, 404 (5th Cir.

---

4. Other circuits use a different standard for joint employers: "where two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute 'joint employers' ..." *NLRB v. Browning–Ferris Indus. of Pennsylvania, Inc.,* 691 F.2d 1117, 1124 (3rd Cir.1982); *see also NLRB v. Greyhound Corp.,* 368 F.2d 778, 780 (5th Cir. 1966); *but see Davis v. NLRB,* 617 F.2d 1264

(7th Cir.1980) (applying *Radio Union's* four factors and joint employer standard in a hybrid analysis); *Sheeran v. American Commercial Lines, Inc.,* 683 F.2d 970 (6th Cir.1982).

5. In July 1998, the board of directors for the new upstart Royale Comtronics, Inc., consisted of Allen Arvig, Carmen Arvig, Don Swenson, Rick Vyskocil, David Arvig, Dave Schornack, and Catherine Ekern. *See* Vyskocil Dep., at 98–99; (Schdkr) Pl.Ex. FF.

1983) (finding that an issue of fact as to which entity made the final decisions regarding employment matters precluded summary judgment). The employment function overlap between Arvig Enterprises and RCSS is apparent by their shared human resources department. *See* Ettish Dep., at 267–68; Arvig Dep., at 52–53. Allen Arvig made the "ultimate decision" to terminate the employment of all four pregnant females. *See* Ettish Dep., at 267–68, 256, 235; *see also* Ekern Dep., at 291; Arvig Dep., at 83–85, 89. Furthermore, employment-related documents list the company names interchangeably. For example, the job posting for the receptionist position was from "Arvig Enterprises, Inc." ((Schdkr) Pl.Ex. X) while the offer of employment Scheidecker received for the same position was from "Royale Comtronics, Inc." (Schdkr) Pl.Ex. L. After being hired, Scheidecker was asked to sign an employment acknowledgment form, which was captioned "Arvig Enterprises, Inc." *Id.* The sharing of the same human resources department, controlled by Allen Arvig, and the employment documents using both corporate names for the same position evidence centralized control of labor relations between Arvig Enterprises and RCSS.

The fourth factor is common ownership. Arvig Enterprises and RCSS manifested common ownership. Allen Arvig owned 50% of RCSS while Carmen Arvig, Don Swenson, Rick Vyskocil, Brad Jacobsen and Jim Johnson each owned 10% or less. *See* Vyskocil Dep., at 12–14. Allen Arvig owned one-third of the class A voting stock of Arvig Enterprises while his mother, Eleanor Arvig, owned a third and his sister, Donna Ward, owned a third. *See id.,* at 19–20.

The presence of factual disputes over whether Arvig Enterprises and RCSS constitute a single employer for Title VII purposes precludes summary judgment. In a similar factual scenario, *McKenzie v.*

*Davenport–Harris Funeral Home,* 834 F.2d 930 (11th Cir.1987), involved one person who was the president of two companies and controlled personnel management of both companies. The *McKenzie* court held that summary judgment was inappropriate because the plaintiff's evidence of common management and common ownership raised a genuine issue of material fact whether the two companies could be considered a single employer for Title VII purposes. *See McKenzie,* 834 F.2d at 933–34. In *Baker v. Stuart Broadcasting Co.,* the Eighth Circuit held that two companies with shared management and ownership were sufficiently interrelated to be consolidated as a single employer for Title VII purposes. The two companies in *Baker* had the same president and were owned by the same individual and members of his family. *See Baker,* 560 F.2d at 392. Here, an analysis of the interrelation of operations, common management, centralized control of labor relations, and common ownership between Arvig Enterprises and RCSS reveals genuine issues of material fact over whether the two corporations operated as a single entity or joint employer for Title VII purposes.

Von Ruden and Scheidecker have presented sufficient evidence to create a factual question of whether Arvig Enterprises and RCSS were operating as a single entity or a joint employer. While Plaintiffs claim that President and CEO Allen Arvig decided to fire the four women because they were pregnant, Defendants allege that the employment decisions were made independently by Arvig Enterprises and RCSS managers. Such evidence raises genuine issues of material fact regarding exactly who was the decision-maker and whether or not unlawful discrimination was the motivation for the terminations. In light of these factual questions, summary judgment is inappropriate.[6]

---

6. From this point forward, the Court will use "Defendant" to refer to Arvig Enterprises, RCSS, or any other corporate entity controlled by Arvig Enterprises.

## C. Disparate Treatment

■■■ Title VII, as amended by the Pregnancy Discrimination Act, establishes that it is unlawful for an employer to discriminate against an individual on the basis of pregnancy or conditions related to pregnancy. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k); *see also Lang v. Star Herald,* 107 F.3d 1308, 1311 n. 2 (8th Cir.), *cert. denied,* 522 U.S. 839, 118 S.Ct. 114, 139 L.Ed.2d 66 (1997). To prevail on a pregnancy discrimination claim, a plaintiff has the burden to show that she was "treated differently because of her pregnancy" or a pregnancy-related condition. *See Deneen v. Northwest Airlines, Inc.,* 132 F.3d 431, 435 (8th Cir.1998) (citing *Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996)).

■■■ Because Von Ruden and Scheidecker have insufficient direct evidence of discrimination, they must rely on indirect evidence of pregnancy discrimination. Thus, their claims are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and clarified by *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1017–18 (8th Cir.1999). Under this analysis,[7] a plaintiff has the burden of establishing a *prima facie* case of discrimination to support a legal presumption of unlawful discrimination. *See McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817; *Kerns,* 178 F.3d at 1017–18. If a plaintiff successfully establishes a *prima facie* case, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* If the employer meets this burden, the presumption created by the *prima fa-*

*cie* case is rebutted and the legal presumption of unlawful discrimination falls from the case. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. The burden of production then shifts back to the plaintiff to show that the proffered reason was not the true reason for its action and that the employer intentionally discriminated due to plaintiff's protected class status. *See Hicks,* 509 U.S. at 509, 113 S.Ct. 2742; *Kerns,* 178 F.3d at 1018. This final burden-shifting analysis requires a two-part showing: first, the employer's proffered reason is pretextual for its discriminatory action; and second, that intentional discrimination is the real reason for the employer's action. *See Hicks,* 509 U.S. at 515, 113 S.Ct. 2742; *Kerns,* 178 F.3d at 1018. However, the *prima facie* case and sufficient evidence of pretext may create a reasonable inference of unlawful discrimination, without additional, independent evidence of discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2108–09, 147 L.Ed.2d 105 (2000).

### 1. *Prima Facie* Case

■■■ To establish a *prima facie* case of pregnancy discrimination, a plaintiff must show that "(1) she was a member of a protected group; (2) she was qualified for her position; and (3) she was discharged under circumstances giving rise to an inference of discrimination." *Bergstrom–Ek v. Best Oil Co.,* 153 F.3d 851, 857 (8th Cir.1998). Von Ruden and Scheidecker satisfy the first element because they were both pregnant, thus they are protected by the Pregnancy Discrimination Act.

■■■ Von Ruden has met the second element of a *prima facie* case because there is evidence that her performance was satisfactory. Von Ruden received positive employee evaluations. *See* Swenson Dep., at 59; (VnRdn) Pl.Ex. L. The

---

**7.** Analysis of discrimination claims under the MHRA is identical to that under Title VII. *See Smith v. DataCard,* 9 F.Supp.2d 1067, 1078– 79 (D.Minn.1998) (MHRA discrimination claims analyzed under Title VII standards).

director of operations, Swenson, believed that she possessed the skills and talents to be an employee of the marketing department. *See id.,* at 262. Von Ruden's co-workers believed her to be an excellent employee and a well-respected and enjoyable co-worker. *See* Renowski Aff. ¶ 2; Evans Aff. ¶ 5.

▮ Scheidecker also has met the second element of qualification because there is evidence that her performance as receptionist was adequate. Her performance review reflects that she "meets expectations." (Schdkr) Pl.Ex. H. Schornack, the general manager, said that she possessed "a very pleasant phone manner" and "answered the phones well and properly." Schornack Dep., at 56–57.

▮ Von Ruden satisfies the third element of the *prima facie* case by presenting evidence that she was discharged under circumstances giving rise to an inference of pregnancy discrimination. Although Von Ruden announced her pregnancy January 2, 1998, human resources management did not honor her requests to discuss her maternity leave with her prior to her dismissal on July 6, 1998. *See* Ettish Dep., at 133; Von Ruden Dep., at 237. After Von Ruden had given birth to her previous child, Ettish asked her if she was planning to have more children. *See* Von Ruden Dep., at 181. Ekern told Von Ruden that once a woman has two children, she does not return to work. *See id.,* at 427–28. Von Ruden, an employee since 1987, consistently received positive performance reviews. *See* (VnRdn) Pl.Ex. L (Von Ruden's personnel file). In her ten years of employment, Von Ruden had not received any written discipline or warning prior to the day she was terminated. *See* Ettish Dep., at 190–91, 161–62. As evidence of discipline, Defendant offers only an e-mail, dated April 13, 1998, in which Ekern advised Von Ruden that projects needed to be completed in a timely manner. *See* (VnRdn) Pl.Ex. F. Prior to her termination, Von Ruden did not receive any warning in writing that she may be terminated for poor performance. *See* Swenson Dep., at 210. Defendant now claims Von Ruden was terminated for deficient performance. *See* (VnRdn) Def. Memo. Support Summ.Jmt., at 8–11. However, in a letter dated September 8, 1998, Ettish informed Von Ruden that her position was eliminated "due to corporate reorganization." (VnRdn) Pl.Ex. D. Moreover, in August 1998, Arvig Enterprises sent a letter to the Minnesota Department of Economic Security stating that its reason for dismissing Von Ruden was a marketing department "reorganization." (VnRdn) Pl.Ex. E. Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext. *See Kobrin v. Univ. of Minnesota,* 34 F.3d 698, 703 (8th Cir.1994). Defendant stated that Von Ruden was terminated due to corporate "reorganization" in 1998, but now claims the reason was deficient performance. Viewed in the requisite light most favorable to Von Ruden, these circumstances create an inference of pregnancy discrimination.

▮ Scheidecker also satisfies the third element of the *prima facie* case by presenting evidence that she was discharged under circumstances giving rise to an inference of pregnancy discrimination. In early 1998, Allen Arvig and Don Swenson told Schornack that Arvig Enterprises was going to buy RCSS. *See* Schornack Dep., at 86–87. At the same time, Allen Arvig had ordered a company-wide "hiring freeze." *See id.,* at 92. Management was looking to get "more productivity per individual," "cut costs," and "improve efficiency." *Id.,* at 98. Although Scheidecker announced her pregnancy several months before giving birth, management had not discussed maternity leave with her. *See id.,* at 67–68. RCSS's general manager said that Scheidecker's termination was related to budget issues and an effort to reduce costs and improve efficiency. *See id.,* at 65. Within a two-month period in 1998, four pregnant women were terminated by the same human resources depart-

ment controlled by Allen Arvig. Because management may have deemed women out on maternity leave less productive than other workers, the circumstances surrounding the restructuring at Arvig Enterprises create an inference of pregnancy discrimination.

Moreover, the contemporaneous terminations of other pregnant employees by the same human resources department provide further circumstantial evidence to support an inference of pregnancy discrimination. *See supra,* § B; Ettish Dep., at 95–97. Tonia Evans was terminated on the same day as Von Ruden. *See* Evans Aff. ¶ 3; Ettish Dep., at 235. Evans was a capable employee who received positive performance reviews. *See* Evans Aff. ¶ 4; Swenson Dep., at 262. Although Evans requested that Ekern discuss the details of her maternity leave, Ekern did not address Evans' maternity leave. *See* Evans Aff. ¶ 9. Under the circumstances, Evans believes that she was fired because of her pregnancy. *See id.* ¶ 15. Daisy Johnson, Scheidecker's co-worker, also was terminated in May 1998. Johnson was told that her position was not necessary due to the installation of Centrex. *See* Johnson Aff. ¶ 6; Ettish Dep., at 257. However, few of Johnson's job duties involved answering phones. *See* Schornack Dep., at 63. In fact, RCSS's general manager stated that the Centrex system did not affect Johnson's position at all. *See id.,* at 84. While working for a temporary agency in November 1998, Johnson was assigned to work at Royale Comtronics in a position similar to the one from which she had been previously terminated. *See* Johnson Aff. ¶ 7.

### 2. Nondiscriminatory Reasons and Pretext

Defendant claims that Von Ruden's deficient performance is the reason she was terminated. *See* (VnRdn) Def.Memo. Support Summ.Jmt., at 8–11. Defendant claims that the implementation of the Centrex system is the reason Scheidecker's position was eliminated. *See* (Schdkr) Def. Memo. Support Summ.Jmt., at 7. After Defendant has articulated a nondiscriminatory basis for its disciplinary actions, the burden shifts back to the plaintiff to create (1) "a fact issue as to whether [the] proffered reasons are pretextual" and (2) "a reasonable inference that [her pregnancy] was a determining factor" in the employment decision. *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1336–37 (8th Cir.1996); *see also Hicks,* 509 U.S. at 515, 113 S.Ct. 2742 (stating that plaintiff must show both that the reason was false, and that discrimination was the real reason). The second aspect of the inquiry "may be satisfied without additional evidence where the overall strength of the *prima facie* case and the evidence of pretext 'suffices to show intentional discrimination.'" *Rothmeier,* 85 F.3d at 1336–37; *see also Reeves,* 120 S.Ct. at 2108 (factfinder's disbelief of the reasons put forward by the defendant may, together with the elements of the *prima facie* case, suffice to show intentional discrimination). However, the plaintiff bears the burden of persuasion as to the ultimate issue of intentional discrimination.

This Court must draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *See Reeves,* 120 S.Ct. at 2110. In both Von Ruden's and Scheidecker's cases, the totality of the circumstances raise a factual issue as to whether Defendant's proffered reasons were pretextual. *See Kerzer v. Kingly Manufacturing,* 156 F.3d 396, 401–03 (2d. Cir.1998) (reversing district court's grant of summary judgment and finding genuine issue of material fact as to whether employer's reasons for terminating employee were false, although employee's evidence in support of her pregnancy discrimination claim "pales in volume and comparison" to employer's evidence).

Von Ruden, a long-term employee, did not receive any written discipline or warning prior to the day she was terminated. Although Defendant now claims Von Ru-

1043

den was terminated for deficient performance, Defendant's 1998 letters to Von Ruden and the Minnesota Department of Economic Security indicated that her position was eliminated due to corporate reorganization. Defendant's change in explanation for Von Ruden's termination supports a finding of pretext. *See Kobrin,* 34 F.3d at 703. Viewed in a light most favorable to Von Ruden, the circumstances surrounding Von Ruden's termination present an issue of fact as to whether Defendant's reason, unsatisfactory performance, was pretextual. Summary judgment is inappropriate.

Like Von Ruden, Scheidecker has presented evidence sufficient to create a dispute of material fact over whether Defendant's reason for her termination was pretextual. During Scheidecker's maternity leave in May 1998, RCSS management asked her to come in and train a new receptionist although the Centrex system was planned to start on June 1, 1998. *See* Scheidecker Dep., at 69–72; Eiter Dep., at 85–86. The installation of the Centrex system was not completed until October 1998. *See* Ettish Dep., at 322–23. Furthermore, the Centrex system was also the reason given for RCSS's termination of Daisy Johnson, despite the fact that few of Johnson's job duties involved answering phones. *See* Johnson Aff. ¶ 6; Ettish Dep., at 257; Schornack Dep., at 63. Moreover, management's goals of reducing costs and improving efficiency raise a factual question of whether the four pregnant women were terminated for reasons other than those proffered by Defendant. *See supra,* p. 15. Viewed in a light most favorable to Scheidecker, these circumstances present an issue of fact as to whether the Centrex system was Defendant's pretextual reason for Scheidecker's termination in May 1998. Summary judgment is denied.

**D. Disparate Impact**

■ To establish a disparate impact claim, a plaintiff must prove, as a threshold matter, that the challenged employment practice, while facially neutral, has a disparate impact on certain employees "because of their membership in a protected group." *EEOC v. McDonnell Douglas Corp.,* 191 F.3d 948, 950 (8th Cir.1999) (citing *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (plurality opinion)). A plaintiff must (1) identify the particular, facially neutral employment practice that she is challenging; (2) demonstrate a disparate impact on the protected group to which she belongs; and (3) prove that the particular challenged practice caused the disparate impact. *See* 42 U.S.C. § 2000e–2(k)(1)(A), (B); *McDonnell Douglas,* 191 F.3d at 950. If a plaintiff is able to establish this *prima facie* case, the burden shifts to the employer to demonstrate that the challenged practice is job related and consistent with business necessity. *See* 42 U.S.C. § 2000e–2(k)(1)(A); *Davey v. City of Omaha,* 107 F.3d 587, 591–92 (8th Cir. 1997).

■ Both Von Ruden and Scheidecker fail to identify any facially neutral employment practice of the Defendant. Instead, there are only vague allegations that Defendant's "policies and practices adversely impact women and also adversely impact women who become pregnant or those who have children." (VnRdn) Complaint ¶ 29; (Schdkr) Complaint ¶ 40. Such vague allegations are insufficient as a matter of law. *See Smith v. Xerox Corp.,* 196 F.3d 358, 367 (2d Cir.1999) (holding that a plaintiff cannot rely on the overall decision-making process of the employer as a specific employment practice) (citing *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 656–58, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)).

Von Ruden's and Scheidecker's allegations essentially identify Defendant's intentionally discriminatory policy against pregnant employees and then assert that the policy had a disparate impact. Such allegations cannot be the bases for a dispa-

rate impact claim. *See Hunt v. Tektronix, Inc.,* 952 F.Supp. 998, 1009 (W.D.N.Y. 1997); *Maresco v. Evans Chemetics,* 964 F.2d 106, 115 (2d Cir.1992). Plaintiffs have muddled two distinct causes of action. They cannot recast a disparate treatment claim to establish a disparate impact claim. *See Verney v. Dodaro,* 872 F.Supp. 188, 193 (M.D.Pa.1995), *aff'd,* 79 F.3d 1140 (3d Cir.1996); *Renaldi v. Manufacturers & Traders Trust Co.,* 954 F.Supp. 614, 620 (W.D.N.Y.1997).

Were Von Ruden and Scheidecker able to identify a facially neutral policy, their sample size of four is too small to be statistically significant. *See Mems v. City of St. Paul,* 224 F.3d 735, 740 (8th Cir. 2000) (finding sample of three to seven is too small to establish disparate impact); *Lewis v. Aerospace Community Credit Union,* 114 F.3d 745, 750 (8th Cir.1997) (finding sample size of three is too small to be statistically significant); *Shutt v. Sandoz Crop Protection Corp.,* 944 F.2d 1431, 1433 (9th Cir.1991) (stating group of eleven is too small to establish a statistical pattern).

**E. Von Ruden's FMLA claim**

 The FMLA protects an employee from discrimination based on her exercise of rights guaranteed by the FMLA. *See* 29 U.S.C. § 2615(a)(1) & (2). "An employer is prohibited from discriminating against employees ... who have used FMLA leave." 29 C.F.R. § 825.220(c). Indeed, an employer may not consider the taking of FMLA leave as a negative factor in employment actions. *See id.* When a plaintiff alleges a retaliatory discharge under the FMLA, the plaintiff must establish that the employer engaged in intentional discrimination. In the absence of direct evidence of discrimination, an intent-based FMLA claim, like other cases involving unlawful discrimination, is analyzed under the *McDonnell Douglas* burden-shifting framework. *See King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir.1999).

An application of the *McDonnell Douglas* analysis to Von Ruden's claim that Defendant discriminated against her for exercising rights guaranteed by the FMLA reveals genuine issues of material fact similar to those raised in Section C, *supra.* Because of the similarities between Von Ruden's FMLA claim and her disparate treatment claim, summary judgment on her FMLA claim is inappropriate. *See supra,* § C.

**F. Von Ruden's Disability discrimination claim**

Von Ruden points to no evidence whatsoever in support of her assertions and fails to address her disability claim in any fashion in response to Defendant's summary judgment motion. Because Von Ruden failed to address her disability claim in her memorandum, summary judgment is appropriate. *See* Fed.R.Civ.P. 56(e).

**G. Von Ruden's Harassment claim**

Von Ruden has failed to address Defendant's motion for summary judgment on her harassment claim, and has not pointed to a single piece of evidence in the record to support her charge. This claim against Defendant therefore fails as a matter of law. *See, e.g., Moss v. Advance Circuits, Inc.,* 981 F.Supp. 1239, 1247 (D.Minn. 1997).

**H. Scheidecker's FMLA claim and MPLA claim**

 Scheidecker claims the actions of Defendant violated the FMLA and the MPLA. The FMLA defines "eligible employee" as "an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A)(i). Similarly, the MPLA defines "employee" as "a person who performs services for hire for an employer from whom leave is requested ... for at least 12 consecutive months immediately preceding the request." Minn.Stat. § 181.940(2). Schei-

decker commenced employment with Defendant on May 27, 1997 and less than one year later requested maternity leave on April 14, 1998. *See supra*, § II. Because Scheidecker was not employed by Defendant for one full year before requesting maternity leave, she was, by definition, not entitled to leave under either the FMLA or the MPLA. Thus, Defendant did violate the FMLA or the MPLA.

Scheidecker argues that Defendant is estopped from denying her eligibility for FMLA leave by operation of the notice provisions of 29 C.F.R. § 825.110(d), because Defendant failed to advise her that she was not eligible for FMLA leave. However, the FMLA statute does not address whether the Department of Labor has the power to require employers to waive the explicit eligibility requirement[8] by failing to give notice. The regulation is essentially a rewriting of the statute. Defendant's failure to notify Scheidecker that she was taking company leave rather than FMLA leave cannot not entitle her to greater rights than she has under the statute. Courts in similar situations have held that this regulation to be invalid because it grants employees greater rights than those conferred by the FMLA statute. *See, e.g., McQuain v. Ebner Furnaces, Inc.*, 55 F.Supp.2d 763, 775 (N.D.Ohio 1999) (holding § 825.110(d) invalid because it purports to transform employees who are ineligible under the FMLA statute into eligible employees); *Seaman v. Downtown Partnership of Baltimore*, 991 F.Supp. 751, 754 (D.Md.1998) (holding that an employee who worked for less than 6 months was ineligible under FMLA and that § 825.110(d) is invalid as "a rewriting of the statute."); *Wolke v. Dreadnought Marine, Inc.*, 954 F.Supp. 1133, 1135 (E.D.Va. 1997) (holding § 825.110(d) invalid, because it impermissibly contradicts the

clear intent of Congress to restrict the class of employees eligible for the FMLA). Additionally, the validity of 29 C.F.R. § 825.110(d) is called into question by the Eighth Circuit's reasoning in a recent decision invalidating a similar Department of Labor regulation. *See Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 937 (8th Cir.2000) (holding that Department of Labor regulations were not based on a permissible interpretation of the FMLA).

Because Scheidecker was not an eligible employee under the FMLA or MPLA, summary judgment is granted.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:[9]

(1) Regarding *Von Ruden v. Arvig Enterprises*, Civil Case No. 99–1260 ADM/RLE Defendants' Motion for Summary Judgment [Doc. No. 51] is **GRANTED in part** and **DENIED in part.**

(A) Summary judgment on Von Ruden's Disparate Treatment claim is **DENIED.**

(B) Summary judgment on Von Ruden's Disparate Impact claim is **GRANTED.**

(C) Summary judgment on Von Ruden's FMLA claim is **DENIED.**

(D) Summary judgment on Von Ruden's Disability claim is **GRANTED.**

(E) Summary judgment on Von Ruden's Harassment claim is **GRANTED.**

(2) Regarding *Scheidecker v. Arvig Enterprises*, Civil Case No. 99–1259 ADM/RLE, Defendants' Motion for Summary Judgment [Doc. No. 84] is **GRANTED in part** and **DENIED in part.**

8. An agency interpretation of a statute contrary to the expressed intent of Congress is not entitled to deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

9. While in no manner wishing to condone Plaintiffs' pattern of tardy submissions and supplementation of the record, the Court does not today reach the motions to strike because little of the material at issue has been relied upon.

(A) Summary judgment on Scheidecker's Disparate Treatment claim is **DENIED.**

(B) Summary judgment on Scheidecker's Disparate Impact claim is **GRANTED.**

(C) Summary judgment on Scheidecker's FMLA claim is **GRANTED.**

(D) Summary judgment on Scheidecker's MFLA claim is **GRANTED.**