Tiffany A. JARRED, Plaintiff,

v.

WALTERS INDUSTRIAL ELECTRONICS, INC., Defendant.

Patricia E. Silver, Plaintiff,

v.

Walters Industrial Electronics, Inc., Defendant.

Nos. 01–0149–CV–W–SOW–ECF, 01–0150–CV–W–SOW–ECF.

United States District Court, W.D. Missouri, Central Division.

July 27, 2001.

Michael Robert Fletcher, Scott G. Hunziker, Sanders, Simpson, Fletcher & Smith, LC, Kansas City, MO, for Plaintiff.

Joseph H. Knittig, Husch & Eppenberger, LLC, Kansas City, MO, for Defendant.

### ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before this Court are defendant Walters Industrial Electronics, Inc.'s Motion to Dismiss Plaintiff's Lawsuit for Lack of Subject Matter Jurisdiction (*Jarred* Doc. # 6), defendant's Motion to Dismiss Counts I, III, and IV of Plaintiff's Original Complaint for Lack of Subject Matter Jurisdiction (*Silver* Doc. # 6), defendant's Suggestions in Support (*Jarred* Doc. # 7; *Silver* Doc. # 7), plaintiffs' Responses in Opposition (*Jarred* Doc. # 9; *Silver* Doc. # 9), and defendant's Replies (*Jarred* Doc. # 12; *Silver* Doc. # 12). For the reasons discussed below, defendant's Motions are denied.

## I. Background

Because these two companion cases involve many of the same facts and legal analysis, the Court will discuss both cases in this combined Order. Both lawsuits concern civil rights actions brought pursuant to Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e, *et seq*), wherein plaintiffs Tiffany A. Jarred ("Jarred") and Patricia E. Silver ("Silver"), both Missouri residents, allege employment discrimination based upon sex. Only one defendant is named in each of plaintiffs' individual complaints: Walters Industrial Electronics, Inc. ("Walters"), a Missouri-based corporation.

Jarred was employed by Walters as a sales representative from March 15, 1999 to July 2000, during which time she also fulfilled secretarial duties for a co-located and co-managed corporation, Test & Measurement, Inc. ("T & M"). On February 9, 2001, Jarred filed the instant lawsuit against Walters, alleging that Walters subjected her to gender discrimination and a hostile work environment, and then constructively discharged her in July of 2000. More specifically, under Count I of her Complaint, Jarred complains that she was required to perform job duties not required of similarly situated male employees, and that she was likewise subjected to employment conditions not imposed upon her similarly situated male co-workers. Under Count II, Jarred alleges that due to the constant and pervasive nature of Walter's conduct in maintaining a hostile work environment, Jarred was prevented in carrying out her designated responsibilities.

Like Jarred, Silver was employed by Walters as a sales representative from November 1997 to July 2000, and similarly, her daily responsibilities included secretarial duties for T & M. Silver also filed a complaint against her former employer on February 9, 2001, in which she stated that Walters subjected her to gender discrimination and a hostile work environment, and then constructively discharged her in July 2000. Count I of Silver's Complaint contends that Silver was required to perform job duties and was subjected to employment conditions not imposed upon similarly situated male employees. Additionally, in Count III of her Complaint, Silver alleges that Walters knowingly maintained a hostile work environment for which it provided no remedy. The consistent exposure to this type of treatment provides the foundation for Count IV of Silver's Complaint in which Silver claims that due to the constant and pervasive nature of Walter's conduct, her work environment became an intolerable venue, preventing her from carrying out her designated responsibilities.

Specific to this order, Defendant argues that because it does not satisfy the statutory definition of "employer" as covered by Title VII, the Court does not have subject matter jurisdiction to hear Plaintiffs' Title VII claims. Plaintiffs contend that Walters and T & M are legally a "single employer" and should be viewed as a single enterprise for the purpose of determining Title VII's statutory numerosity requirement.

## II. Standard

■ Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for a dismissal based on the court's lack of subject matter jurisdiction to hear the case. Dismissal under Rule 12(b)(1) is appropriate if the issue before the district court is whether the plaintiff has failed to satisfy a threshold jurisdictional requirement. *See Trimble v. Asarco, Inc.*, 232 F.3d 946, 955 n. 9 (8th Cir.2000). In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truth-

fulness of its averments. *See Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). In a "facial attack," the court restricts itself to the face of the pleadings, and all of the factual allegations concerning jurisdiction are presumed to be true. *See id.* However, in a factual challenge to jurisdiction under 12(b)(1), the court considers matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's allegations. *See Osborn v.. United States,* 918 F.2d 724, 729 n. 6 (8th Cir.1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). Furthermore, the existence of disputed material facts does not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See id.* "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Moreover, the plaintiff has the burden of proof that jurisdiction does in fact exist. *See id.*

### III.  Discussion

#### A.  Numerosity

Defendant's motion is premised upon 42 U.S.C. § 2000e(b) which states that Title VII applies to employers with "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." As a preliminary matter, it is apparent that Walters, by itself, does not fulfill Title VII's employee numerosity requirement. Walters asserts, and Plaintiffs concede, that Walters never employed more than fourteen employees for twenty or more calendar weeks during the years 1996 through 2000, as Defendant's payroll records demonstrate. *See also Walters v. Metropolitan Educ. Enter., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997) (holding that payroll records may provide evidence for purposes of determining the number of individuals with whom an employer has an employment relationship). During those years, the most employees that Walters employed at any one time was fourteen.

Plaintiff argues that defendant Walters is an "employer" pursuant to Title VII because Walters and T & M operate in such a way that T & M's employees should be included in evaluating the numerosity requirement. Such a finding by a court normally reflects a judgment that two or more nominally separate business entities are of such coagulation that they may properly be considered as one, for various statutory purposes. *See Baker v. Stuart Broad. Co.,* 560 F.2d 389, 391 (8th Cir. 1977).

■ "Title VII of the Civil Rights Act of 1964 is to be accorded a liberal construction in order to carry out the purposes of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination." *Baker,* 560 F.2d at 391 (citations omitted). Such a liberal construction is to be given to the definition of "employer," which incorporates the two concepts of "joint employer" and "single employer." *See id.; NLRB v. Browning–Ferris Indus. of Pennsylvania, Inc.,* 691 F.2d 1117, 1122 (3rd Cir.1982). A "single employer" relationship exists "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.' The single entity analysis is appropriate when separate corporations are not what they appear to be, that in truth they are but divisions or departments of a 'single enterprise.' " *Scheidecker v. Arvig Enter., Inc.,* 122 F.Supp.2d 1031, 1037 (8th Cir.2000) (citations omitted).

By contrast, the "joint employer" relationship consists of no single integrated enterprise. Rather, the analysis assumes

the existence of separate legal entities which have chosen to handle jointly important aspects of their employer-employee relationship. *See Scheidecker*, 122 F.Supp.2d at 1038 (citations omitted). "A finding of joint employer is proper where one company has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.*

■ The Eighth Circuit analysis for determining a "single employer" or "joint employer" relationship consists of the same four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relationship; and (4) common ownership or financial control. *See id.* at 1037–1038 (quoting *Baker*, 560 F.2d at 392). Although no single factor is controlling, these four factors must nonetheless be applied in the determination of "employer" under 42 U.S.C. § 2000e(b). *See id.*

In applying the *Baker* analysis to the instant case, the Court finds the following facts:

(1) *Interrelationship of Operations.* Although nominally there is little relationship between the operations of Walters, which distributes electronic components and parts to original equipment manufacturers, and the operations of T & M, which is engaged in the business of repair and calibration of electronic test equipment, both externally and internally there exists a significant degree of interrelationship. To the outside observer, the two entities appear closely related: both share the same building space with a common elevator, stairwell, and time-clock area for employees. Both companies also retain identical phone and fax numbers, and the two share mailing and shipping services. Contrary to Defendant's argument that such aesthetic facts fail to satisfy the "interrelation of operations" prong of the analysis, this district has held that the sharing of office space, switchboard, and utilities goes toward the finding of an internal working relationship. *See EEOC v. Financial Assurance, Inc.*, 624 F.Supp. 686, 690 (W.D.Mo.1985).

Additionally, Defendant's website and T & M's Uniform Resource Locator ("URL") internet address mirrors this outward manifestation of commonality. While each company still retains their own name and corresponding logos, their websites are so structured and "linked" so as to embed T & M's internet webpage within Walter's website, as expressly evidenced by T & M's URL address "www.walters-ind.com/t & minc/main-page1.html." (Silver's Ex. 5.) As such, it is difficult to reach T & M's webpage without first going through Walter's internet site. Moreover, T & M's website expressly advertises the company's physical cohesiveness with Walters: "Test & Measurement, Inc., is Co-located [sic] with Walters Industrial Electronics. We serve you, the customer, from the same location. Please accept our open invitation to visit our newly expanded and modern Laboratory upstairs from the counter area of Walters Industrial Electronics." (*Id.* at p. 2.)

Internally, the degree of interrelationship between Defendant and T & M is even greater, particularly as concerns Jarred's and Silver's secretarial jobs for Walters and the entertainment of joint pursuits by the two entities. Plaintiffs allege, and Defendant does not contest, the daily direct sharing of Jarred and Silver's secretarial services with T & M (e.g., Plaintiffs were told to state, "Good Morning. Walters Test and Measurement," and to direct any calls for T & M to its upstairs office, thus indicating not only that Plaintiffs were also employed by T & M, but also that Walters and T & M were nominally co-businesses). Respectively, this created a dual and simultaneous benefit

for both companies produced by the Plaintiffs' duties. There also existed an open possibility, albeit a rarely used one, for Walter's employees to receive monetary incentives for securing business for T & M during the course of performing their job duties for Walters. In addition, both entities have jointly conducted employee-management events such as Christmas parties and customer appreciation parties. Although each company pays for its own rent and related operation expenses, and each entity maintains its own liability insurance and workers' compensation insurance, the Court nevertheless finds a significant internal working relationship between Walters and T & M. *See also Financial Assurance*, 624 F.Supp. at 690 (holding that two businesses had a significant operational interrelationship even after one company took over its own payroll and insurance functions).

(2) *Common Management.* Both Walters and T & M are managed at their highest level by Benjamin T. Embry ("Embry"), the president for both entities. In addition, Embry, as Jarred and Silver's highest superior, is sole owner of T & M. Similarly, Sandra Embry, Benjamin Embry's wife, has verified on 2001 Missouri Annual Business Registration Reports that she holds officer positions for both Walters and T & M, as well as a seat on Walter's Board of Directors. While the Court acknowledges that all other management personnel for Defendant are per se different from that of T & M, the Court yet finds Defendant's argument, that no commonality of management exists between the separate entities, to be specious at best. The vice presidents for Walters and T & M are William Embry and Elizabeth Karriker, respectively. Both are relatives of Embry, and Elizabeth Karriker (Embry's daughter) receives advice and guidance from her father as to the management of T & M. Likewise, Mitch Vince, manager for Walters and the main source of Plaintiffs' complaints, also worked, on at least one occasion, to secure business for T & M.

(3) *Centralized Control of Labor Relations.* As president of both companies, Embry has the ability to establish and enforce canons of discipline upon employees of both entities, as well as the inherent power to unilaterally affect workplace policy. Furthermore, he can, and has, directly encouraged Defendant's employees to provide business for T & M, and in return to receive financial benefits for any such referral. While the Court recognizes the limited amount of evidence Plaintiffs have provided with respect to any other single source of labor relations, this District has recognized a mere "observable degree of centralized control of labor relations" as satisfactorily fulfilling the third prong of the *Baker* analysis. *Financial Assurance, Inc.*, 624 F.Supp. at 691. In the instant case, the Court finds that Walters and T & M had a less than complete, though still significant, degree of centralized control of labor relations.

(4) *Common Ownership or Financial Control.* The Eighth Circuit has recognized this final factor, "common ownership," to be the least relevant in considering whether two nominally separate business entities may properly be considered sufficiently integrated to warrant unitary treatment for Title VII statutory purposes. "While none of these factors, separately viewed, have been held controlling, stress has normally been laid upon the first three factors...." *Pulitzer Publ'g Co. v. NLRB*, 618 F.2d 1275, 1279 (8th Cir.1980) (quoting *Parklane Hosiery Co., Inc.*, 203 N.L.R.B. 597, 612, *amended on other grounds*, 1973 WL 4704, 207 N.L.R.B. 991 (1973)).

Benjamin Embry owns T & M in its entirety, and although he holds the position of president of Walters, it is Embry's

wife Sandra who owns the majority of Walters. The remainder of Walters, as alleged by Defendant, is owned by William Embry (also Defendant's vice-president), Benjamin Allen Embry (Benjamin T. Embry's son), and Ellen Louise Little. The Court would be remiss, however, in failing to note that Defendant's letter to Plaintiffs, regarding Plaintiffs' July 17th meeting with the "management and ownership of Walters," lists Elizabeth Karriker (T & M's Vice–President) as co-owner of Walters, along with Sandra and William T. Embry. Similarly, Defendant's afore-mentioned website portrays Walters as commonly owned by both Benjamin T. Embry and Sandra Embry. While such a letter and website are certainly not dispositive as to the true ownership of either company, they nevertheless demonstrate Defendant's active portrayal to employees and customers of Walters and T & M's common ownership and joint control.

Accordingly, the Court finds sufficient facts to hold as a matter of law that Walters and T & M share management and, at the very least, the appearance of joint ownership. In addition, the Court finds that there was a significant degree of interrelationship of internal operations as well as a fairly significant degree of centralized control of labor relations. While evidence as to common ownership and financial control is less clearly developed in the record, the Court is of the opinion that the record supports a conclusion that Walters and T & M should be consolidated for the purposes of 42 U.S.C. § 2000e(b).

### B. Notice

Defendant additionally argues that because Plaintiffs did not name T & M in their EEOC Charges of Discrimination, they cannot now argue that T & M and Walters comprised a single enterprise. Defendant asserts that Plaintiffs cannot add a separate company, T & M, to this case because T & M had no notice that Plaintiffs were implicating the company in their charges of discrimination.

■ Ordinarily, a party not named in plaintiff's EEOC charge cannot be sued in a subsequent civil action. See Greenwood v. Ross, 778 F.2d 448, 451 (8th Cir.1985). However, this is a prudential rule which does not operate as a limitation upon the jurisdiction of the district court. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Rather, "[w]here the purposes of the Act are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of the federal courts." Virgo v. Riviera Beach Assoc., Ltd., 30 F.3d 1350, 1358–59 (11th Cir.1994) (citations omitted). It is well-settled in the Eighth Circuit that a Title VII claimant's failure to name a party in an EEOC charge will not serve as a bar to a later civil action, provided that the unnamed party has been afforded adequate notice of the EEOC charge and the opportunity to participate in any proceedings held before the EEOC. See Catanzaro v. Supervalu, Inc., 1994 WL 780841 at *2 (E.D.Mo.1994) (citations omitted). "Moreover, there is a presumption of adequate notice and the opportunity to participate in EEOC proceedings for an unnamed party under the identity of interest doctrine." Id. "The named respondent and the unnamed party may share sufficient identity of interest to satisfy Title VII's intention that each defendant shall have adequate notice and opportunity to conciliate." Greenwood, 778 F.2d at 451.

■ Because this Court has previously found that Defendant and T & M are of such coagulation that they may properly be considered as one for purposes of Title VII's employee numerosity requirement, it likewise presumes that T & M had adequate notice as well as an opportunity to participate in Defendant's EEOC proceed-

ings under *Catanzaro*'s identity of interest doctrine. Indeed, evidence introduced by Plaintiffs, establishing that Walters and T & M constitute a "single employer," also demonstrates that T & M should have and did receive sufficient notice. Both Walters and T & M retain the same registered agent, Michael R. Thiessen, as stated on their 2001 Annual Missouri Business Registration Reports. In the state of Missouri, a registered agent is "an agent of such corporation upon whom any process, notice, or demand required or permitted by law to be served upon a corporation may be served." Mo.Rev.Stat. § 351.380(1) (1991). As such, T & M was adequately notified when Plaintiffs' charges of discrimination against Defendant were delivered to Thiessen. Furthermore, Benjamin T. Embry's letter to Silver attempting to confirm "our" meeting "with the management and ownership of Walters," includes the names of Elizabeth Karriker (vice president of T & M) and Sandra Embry (treasurer of T & M) in the letter's closing. If both of these officers of T & M were indeed present at the meeting with Silver to discuss her allegations, as the letter so implies, T & M was afforded adequate notice and an opportunity to conciliate. Accordingly, the Court finds that Plaintiffs' failure to name T & M in their charges of discrimination is not fatal to their arguments.

### IV. Conclusion

For the above-stated reasons, it is hereby

ORDERED that defendant Walters Industrial Electronics, Inc.'s Motions to Dismiss for Lack of Subject Matter Jurisdiction (*Jarred* Doc. # 6, *Silver* Doc. # 6) are denied.